**Benjamin Grover BRUMIT, Appellant,**

**V.**

**The STATE of Texas, State.**

**No. 2–99–552–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 22, 2001.

Rehearing Overruled April 26, 2001.

---

Tim Copeland, Abilene, for appellant.

Stephen E. Bristow, Dist. Atty., Graham, for appellee.

Before CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

DAY, Justice.

### I.  INTRODUCTION

A jury convicted Appellant Benjamin Grover Brumit of the offense of manufacture of a controlled substance in an amount of four grams or more but less than two hundred grams. The trial court assessed punishment at thirty years' confinement and a $10,000 fine.

On appeal, Appellant raises four points. In his first point, Appellant alleges that the trial court erred in refusing to suppress illegally obtained evidence. In his second and third points, Appellant challenges the legal sufficiency of the evidence to prove he manufactured the amount of methamphetamine alleged in the indictment. Finally, Appellant argues that the evidence was legally insufficient to prove that he manufactured methamphetamine. We reverse and remand.

### II.  BACKGROUND

On December 3, 1998, Officer Tommy Martin, a deputy sheriff in Young County, interviewed "a cooperating individual" who told Officer Martin that the individual "had seen the suspected party in possession of a quantity of a powdery substance suspected of being methamphetamine at the suspected place." Based on this information, Officer Martin obtained a search warrant for Appellant's residence. The next day, in executing the warrant, the officers seized laboratory equipment and chemicals consistent with a methamphetamine lab.

### III.  LEGAL SUFFICIENCY OF THE EVIDENCE

In his second and third points, Appellant complains about the legal sufficiency of the evidence to prove he manufactured at least four grams of methamphetamine.

#### A.  STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence to support a conviction, we

view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex.Crim.App.1991), *overruled on other grounds, Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim.App.2000).

### B. Amount of Methamphetamine

■ The Texas Health and Safety Code defines "manufacture" as:

[T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging of the substance or labeling or relabeling of its container.

Tex. Health & Safety Code Ann. § 481.002(25) (Vernon Supp.2001). The form in which a controlled substance is recovered is not determinative of whether the accused has committed the offense of manufacturing the drug. *Fronatt v. State,* 630 S.W.2d 703, 704 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd).

■ During trial, the State proved that roughly 0.34 grams of actual methamphetamine were found during the execution of the warrant on coffee filters and trace amounts were found on other containers at Appellant's house. In order to prove up the remaining amount the State relied on testimony about how much methamphetamine could have been produced from the empty containers of ingredients for methamphetamine. The State contends that empty boxes of pseudoephedrine tablets were found, which indicated 528 tablets had been used to manufacture methamphetamine. The following exchange occurred at trial when the State questioned Don Taylor, a chemist with the Texas Department of Public Safety, concerning the empty boxes:

[State:] If I took a 12–pack of 48 tablets each at 60 milligrams of an ephedrine tablet, six boxes of 48 tablets each at 60 milligrams of ephedrine tablets and 12 boxes at 24 tablets each at 60 milligrams of ephedrine tablets, could you predict, based on that amount of packages, which would be thirty boxes, as to the approximate amount of grams that—of methamphetamine that could be produced from those amount of ephedrine tablets?

[Taylor:] Yes, sir, I could.

. . . .

Given the information you just gave me, a total of approximately 51 grams of methamphetamine could be made from that amount of tablets, with those strengths of tablets that you gave me.

The State also relies on the testimony of Max Courtney, a forensic chemist, who testified that "[u]p to 23.7 grams of methamphetamine" would have been produced from the 528 pseudoephedrine tablets. Courtney further testified that the byproduct that had been found in another container looked to be a reasonable leftover quantity of the 528 used pseudoephedrine

tablets. However, Courtney tempered his testimony by saying: "It's basically all now circumstantial, but I think it's a reasonable conclusion. It looks like—the remnants of this 528 tablets, that looks like a reasonable leftover quantity, and one should be able to make more than four grams from 528 tablets."

In a similar case, the Texas Court of Criminal Appeals held that the State had not proven that the defendant had manufactured the aggregate amount of methamphetamine as charged in the indictment when the State only showed that the defendant had the chemicals on hand to produce methamphetamine, but there was no proof that there were sufficient chemicals to produce the aggregate amount. *See Goff v. State*, 777 S.W.2d 418, 420 (Tex. Crim.App.1989). The court specifically said, "The record ... is devoid of any evidence to show that appellant had sufficient chemicals on hand for an output of 400 grams or more." *Id.* Therefore, the capability of the lab to produce the amount of controlled substances as charged is a relevant factor in considering the amount of a controlled substance manufactured. *Id.* at 420 n. 2.

The State argues that it carried its burden under *Goff* because it provided evidence of the amount of methamphetamine that had been produced in the past. However, unlike the State in *Goff*, the State in this case is attempting to prove past manufacture of a controlled substance with empty containers and leftovers, not chemicals on hand. While this evidence may prove methamphetamines were manufactured in the past, it is insufficient to show the *amount* of methamphetamine manufactured in the past. The most methamphetamine the police found during their search

of Appellant's house was 0.34 grams in coffee filters. Other than these coffee filters, no more than trace amounts of methamphetamine were found during the execution of the search warrant. Moreover, the chemists' testimony concerning the amount of methamphetamine that was produced was inconsistent. Taylor testified that the same number of used pseudoephedrine tablets would yield almost twice as much methamphetamine as Courtney testified could be produced. Therefore, we hold that a reasonable doubt exists as to the amount of methamphetamine that was produced.

Furthermore, we hold that the evidence is insufficient to prove that Appellant had the capability of manufacturing more than four grams of methamphetamine in the future with the items the police found during their search. Courtney testified that the pseudoephedrine is dissolved into denatured alcohol to begin the process of manufacturing methamphetamine. In answering the State's question concerning whether there was enough denatured alcohol to make four grams of methamphetamine, Courtney responded "there was enough to do another batch, but I don't know that you could get enough out to make another four grams with the quantity that was there." Therefore, under the rationale of *Goff*, the record does not show that appellant had sufficient chemicals on hand to produce at least four grams of methamphetamine. We sustain Appellant's second and third points.[1]

## IV. CONCLUSION

Having sustained Appellant's second and third points, we reverse the judgment of the trial court and remand the case to the

---

1. Because of our disposition of Appellant's second and third points, we do not need to   address his remaining points.

trial court with instructions to enter a judgment of acquittal as to the offense of unlawful manufacture of methamphetamine of four grams or more but less than 200 grams.