NO. 07-05-0069-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 21, 2006
_____

SHANON D. HISER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-405173; HONORABLE CECIL G. PURYEAR, JUDGE
_____

Before REAVIS and CAMPBELL and HANCOCK, JJ.

_____**MEMORANDUM OPINION**


Appellant, Shanon Hiser, appeals his conviction for the offense of manufacturing a

controlled substance (methamphetamine) in an amount of 400 grams or more,  contending

the evidence was legally and factually insufficient.  We affirm.


Background


On January 30, 2004, Franklin Dunn went to a shed located on his property to

gather some supplies when he noticed a vehicle outside of the building.  After contacting

the Sheriff's office, Dunn investigated the vehicle and discovered appellant and his girlfriend nearby. Dunn also noticed a smell of ammonia and unsuccessfully attempted to locate the source. Upon their arrival, sheriff deputies located the source of the smell to be a setup consisting of two pitchers within a larger pail. The setup also contained a sludge compound and a liquid solution. The deputies further discovered the following items in appellant's vehicle: cans of starter fluid, tubing, a funnel, remnants of a lithium battery, a Coleman stove, propane bottles, scales, baggies, a small amount of a methamphetamine/cocaine mixture, and syringes. Upon further investigation and field tests, the deputies concluded that the liquid in the pail contained ammonia, and the sludge compound was methamphetamine oil.

At trial, a chemist testified that the items found in appellant's vehicle were useable in the manufacture of methamphetamine. However, the evidence also showed that the methamphetamine would have to undergo an additional refining stage before it would be in the powder form commonly distributed. Appellant and his witnesses testified that appellant used the items found in his vehicle legitimately for camping and landscaping purposes. The jury returned a guilty verdict.

On appeal, appellant contends that the evidence is legally and factually insufficient because the evidence is circumstantial and fails to prove that appellant was in care, custody or control of the setup containing the methamphetamine oil. Finally, appellant contends that items necessary to complete the manufacture of methamphetamine were not present and, therefore, the State cannot show the complete manufacture of methamphetamine.

In reviewing the legal sufficiency of the evidence, we recognize that the jury is the sole judge of the weight and credibility of the evidence. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). We look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Id. at 319; Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Circumstantial evidence alone is sufficient to establish guilt. Id. Furthermore, the standard of review on appeal is the same for both direct and circumstantial evidence cases. Id.

In considering appellant's claim that all of the evidence is circumstantial, we can conclude that the distinction is irrelevant since circumstantial evidence is reviewed the same as direct evidence, and can be sufficient alone to establish the guilt of an actor. See id. Therefore, we will review the evidence for legal sufficiency without regard to appellant's classification of the evidence as circumstantial. Viewing the evidence in light most favorable to the verdict, we note that appellant was found in close proximity to the methamphetamine oil and was driving a vehicle possessing several common household items used in the manufacture of methamphetamine. In addition, deputies found items in appellant's vehicle that are commonly used in the packaging and distribution of drugs. The State's chemist testified as to a procedure commonly used to manufacture methamphetamine and described the methamphetamine oil as a transitional by-product of the procedure which usually ended with powder methamphetamine as the final product.

3

Although it may be true that the methamphetamine oil would require further refining, the State's chemist testified that the solution as found contained methamphetamine, and thus was a controlled substance under state law. Viewing the evidence in light most favorable to the verdict, a reasonable jury could have believed the items found in appellant's vehicle were capable of manufacturing methamphetamine. A reasonable jury could have found that the setup containing methamphetamine oil indicated that the manufacture of methamphetamine was ongoing, and that appellant was at the site to complete the process.

As to appellant's contention that the evidence is insufficient to show that the process could be completed at that location, the form of the drug recovered is not determinative of whether the offense of manufacture of a certain controlled substance is committed. Fronatt v. State, 630 S.W.2d 703, 704 (Tex.App.–Houston [1st Dist.] 1981, pet. ref'd). The Texas Controlled Substance Act's definition of "manufacture" includes the production, preparation, propagation, compounding, conversion or processing of a controlled substance, and includes the packaging or repackaging of the substance. See TEX. HEALTH & SAFETY CODE ANN. art 481.002(25) (Vernon Supp. 2005). Proof sufficient to show any of the procedures is sufficient to support a conviction for the manufacture of a controlled substance. See Fronatt, 630 S.W.2d at 704. Here, evidence was undisputed that the substance found was methamphetamine. Further, testimony from the chemist and officers indicated that the methamphetamine oil had undergone a prior stage to extract the ephedrine from some pills, thereby allowing a reasonable jury to conclude that at least one step in the manufacturing of methamphetamine had been completed. The jury could have

4

also considered the baggies in appellant's possession as an indication that appellant was ready to package the final product for distribution. Having found the evidence legally sufficient to support the conviction, we overrule appellant's first issue.

Evidence is factually sufficient if, when all of the evidence is considered in a neutral light, a rational jury can make a finding of guilt beyond a reasonable doubt. See Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). There are two ways in which the evidence may be factually insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, considering all of the evidence, both for and against the verdict, the contrary evidence may be so strong that the beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. In performing a factual sufficiency review, we are to give deference to the fact finder's determinations involving the credibility and demeanor of witnesses. Id. at 481. We may not substitute our judgment for that of the fact finders. Id. at 482. An opinion addressing factual sufficiency must include a discussion on the most important and relevant evidence that supports the appellant's complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Appellant's witnesses testified that the tubing, muriatic acid, propane tanks, and starter fluid were all items that appellant used for legitimate purposes. The State's witnesses testified that, although the possession of the items individually is not abnormal, the possession of these common household items combined is what indicated the possible manufacture of methamphetamine. The State also pointed out that neither appellant nor his witnesses could explain the presence of a funnel, a stripped lithium battery, or

5

punctured starter fluid cans within appellant's possession or the reason the items were stripped or punctured. The State's witnesses did explain that lithium batteries are stripped to gain the lithium inside the battery, and that the starter fluid cans are punctured to gain ether after the propellant has been expelled. Both lithium and ether are used in the type of setup found in the shed.

Next, appellant also provided an alternate explanation as to his presence in the farmer's shed and contended that the State's evidence never placed him in control of the items. Appellant claimed that he and his girlfriend were driving around the area, and ended up at the location because they were seeking privacy. Appellant claims that he never saw, smelled, or interacted with the setup in the shed. However, the State's witnesses all testified that an ammonia smell was unmistakable, and that the smell could be detected throughout the shed as well as outside of the shed. The jury is allowed to judge the credibility of witnesses. See Zuniga, 144 S.W.3d at 481. The jury could have discounted appellant's alternate theory that he did not know of the presence of the setup and that his presence in the shed was coincidental. The jury could have depended on the testimony of the State's witnesses to reach its verdict that appellant was guilty of manufacturing methamphetamine. Considering all of the evidence, both for and against the verdict, the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. We overrule appellant's second issue.

Having overruled appellant's issues, we affirm.


Mackey K. Hancock
Justice

Do not publish.

6